IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PURE MAINTENANCE HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MOLD ZERO SERVICES, LLC, and MOLD ZERO, LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Civil No. 1:25-cv-00111-RJS<br><br>Chief Judge Robert J. Shelby |

Now before the court is Plaintiff Pure Maintenance Holdings, LLC's Motion for a Temporary Restraining Order.[1] For the reasons explained below, the court GRANTS the Motion in part.

## BACKGROUND[2]

This is a case involving mold treatment services. Plaintiff offers clients a patented mold removal and remediation process.[3] To build a customer base and brand recognition, Plaintiff has registered for and obtained service marks with the U.S. Patent and Trademark Office (USPTO).[4] As a part of its business model, Plaintiff also licenses its patented process and leases its equipment to franchisees.[5] Defendants Mold Zero and Mold Zero Services entered into a series

---

[1] Dkt. 10, *Rule 65(B) Motion for Temporary Restraining Order, and Supporting Memorandum* (*Motion*).

[2] Given Defendants have not denied any of Plaintiff's allegations, the court must accept them as true at this stage. *Edmisten v. Werholtz*, 287 F. App'x 728, 732 (10th Cir. 2008) (citing *Smotherman v. United States,* 186 F.2d 676, 678 (10th Cir. 1950)).

[3] Dkt. 1, *Verified Complaint* ¶ 14.

[4] *Id.* ¶ 15.

[5] *Id.* ¶ 16.

1

of contracts with Pure Maintenance to become such licensees.[6] However, Defendants later failed to pay the agreed-to licensing fees.[7]

As a result, Plaintiff terminated the agreements in spring 2023 and initiated a lawsuit against Defendants in Utah state court.[8] Plaintiff prevailed in that action and obtained a judgment against Defendants.[9] However, Defendants have not yet satisfied the judgment because, among other things, they have failed to return leased equipment to Plaintiff as required by the judgment.[10]

In addition, Defendants have continually used Plaintiff's intellectual property without permission or authorization.[11] Plaintiff owns certain service marks, which are federally registered service marks and on the USPTO's Principal Register.[12] The Marks are (1) InstaPure®, (2) EverPure®, and (3) Pure Maintenance® (the Marks),[13] and Plaintiff has invested substantial resources and devoted significant effort to obtain and maintain the Marks.[14] Recently, on or about May 20, 2025, Plaintiff learned that Defendants used the Marks at a trade show without permission or authorization.[15] On two occasions in January 2023, Defendants impermissibly used the InstaPure® and EverPure® marks in solicitations and advertisements published on the internet and social media platforms like Facebook and Instagram.[16] And

---

[6] *Id.* ¶ 17.
[7] *Id.* ¶¶ 18–21.
[8] *Id.* ¶¶ 22–23.
[9] *Id.* ¶ 24.
[10] *Id.* ¶¶ 25–27.
[11] *Id.* ¶ 28.
[12] *Id.* ¶ 29.
[13] *Id.*
[14] *Id.* ¶ 30.
[15] *Id.* ¶ 32.
[16] *Id.* ¶¶ 33–34.

currently, Defendants hold themselves out as licensees of Pure Maintenance by posting, on publicly available websites available to all Utahns, that they are "powered by Pure Maintenance" or are "Pure Maintenance" approved.[17]

Plaintiff brought this action on August 6, 2025, asserting the following claims: (1) trademark infringement and unfair competition under federal law; (2) false advertising under federal law; (3) unfair competition under Utah law; (4) misappropriation of trade secrets and confidential information under Utah law; (5) defamation; (6) unjust enrichment; and (7) a cause of action to enforce a state court judgment under Federal Rule of Civil Procedure 70.[18] The following day, Plaintiff filed its Motion for a Temporary Restraining Order.[19] The Motion seeks to enjoin Defendants from:

(1) Using the Marks or any mark that is confusingly similar to the Marks;

(2) Advertising, promoting, offering for sale, and/or selling any services that reference or relate to the Marks;

(3) Imitating Pure Maintenance for any purpose, including, without limitation, attempting to use the Marks and/or Pure Maintenance's goodwill by imitation, fraud, mistake, or deception;

(4) Using Pure Maintenance's social-media accounts for any purpose, including, without limitation, to advertise, promote, offer for sale, and/or sell any of Defendants' services;

(5) Applying to register any mark that is confusingly similar to any of the Marks, in connection with advertising, promoting, or offering services related to mold removal,

---

[17] *Id.* ¶ 36.
[18] *Id.* ¶¶ 40–91.
[19] *See generally Motion.*

  remediation, cleaning, and other related services, or any other name, word, term, symbol, device, or combination of the foregoing that includes "Pure" and/or "Ever," and/or "Insta" in whole or in part, with the USPTO or any State in the United States;

(6) Emailing any of Pure Maintenance's customers for any purpose;

(7) Issuing and/or distributing any communication in any media (tangible or otherwise) from Defendants that includes and/or mentions Plaintiff, Plaintiff's founders, or the Pure Maintenance brand and Marks.

(8) Prohibiting Defendants from using any Pure Maintenance trademarks, trade names, trade dress or other intellectual property, and prohibiting Defendants from using or disclosing any confidential or proprietary information relating to Pure Maintenance and obtained by Defendants during the franchise term.[20]

On August 8, 2025, the court set a status and scheduling conference to occur on August 12, 2025 for the purpose of setting a briefing schedule on Plaintiff's Motion.[21] The court ordered Plaintiff to promptly serve Defendants and file proof of service on the docket.[22] Plaintiff's filing demonstrates each Defendant had at least twenty-four hours notice prior to the August 12, 2025 hearing.[23] However, Defendants failed to appear at the hearing.[24] To date, Defendants have failed to appear in this matter and have not otherwise contacted the court or Plaintiff's counsel.

  The court now considers its jurisdiction and then addresses the Motion.

---

[20] *Id.* at 1–2.

[21] Dkt. 11, *Order Setting Status and Scheduling Conference*.

[22] *Id.*

[23] Dkt. 16, *Proof of Service & Verification*.

[24] Dkt. 14, *Minute Entry*.

## JURISDICTION

The court has subject matter jurisdiction over Plaintiff's federal claims,[25] and the court exercises supplemental jurisdiction over Plaintiff's state law claims because they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."[26] Further, the court has personal jurisdiction over Defendants under the terms of an agreement entered into by the parties.[27]

## LEGAL STANDARD

In the Tenth Circuit, the court may only issue a temporary restraining order when the movant establishes the following four elements:

> (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the [temporary restraining order] is issued; (3) that the threatened injury outweighs the harm that the [temporary restraining order] may cause the opposing party; and (4) that the [temporary restraining order], if issued, will not adversely affect the public interest."[28]

A temporary restraining order is an extraordinary remedy that may be awarded only if the right to relief is "clear and unequivocal."[29] In certain cases, however, a plaintiff faces the additional burden of making a "strong showing" that the likelihood of success on the merits and balance-of-harms factors weigh in its favor.[30] This heightened standard applies in the Tenth Circuit when a

---

[25] 28 U.S.C. § 1331 (federal question jurisdiction); 15 U.S.C. § 1121 (jurisdiction over trademark actions); 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks.").

[26] 28 U.S. Code § 1367(a).

[27] *Complaint* ¶ 9; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (noting a party may consent to personal jurisdiction by agreeing to a forum selection clause).

[28] *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

[29] *Id.*

[30] *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016).

plaintiff seeks a "disfavored" injunction.[31] A disfavored injunction is one that (1) "mandates action (rather than prohibiting it)," (2) "changes the status quo," or (3) "grants all the relief that the moving party could expect from a trial win."[32] The Tenth Circuit defines the "status quo" as "the last peaceable uncontested status existing between the parties before the dispute developed."[33]

## ANALYSIS

The court now turns to its analysis of the factors governing injunctive relief. As an initial matter, the court finds Plaintiff is pursuing a disfavored injunction because it seeks to alter the status quo by ordering Defendants to cease certain activities. Plaintiff is therefore required to make a "strong showing" that the likelihood of success on the merits and balance-of-harms factors weigh in its favor.[34]

### I. Likelihood of Success on the Merits

Plaintiff has made a strong showing that it is likely to succeed on the merits of its federal trademark infringement and unfair competition cause of action.

"Trademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under [the Lanham Act]."[35] The claims require proving the same elements: (1) "a protectable interest in the trademark;" (2) the defendant "has used an identical or similar trademark in commerce;" and

---

[31] *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019).

[32] *Id.*

[33] *Id.* at 798 n.3 (quoting 11A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2948 (3d. ed. & Nov. 2018 update)).

[34] *See Fish*, 840 F.3d at 724.

[35] *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1050 (10th Cir. 2008).

(3) the defendant "has likely confused customers by using a similar trademark."[36]  "A certificate of registration of a trademark is prima facie evidence of the validity of the mark . . . ."[37]  And generally, when a terminated franchisee continues to use the former franchisor's trademarks, there is a high likelihood of customer confusion.[38]

      First, Plaintiff has provided copies of its trademark registration certificates, which constitutes prima facie evidence that it has a protectable interest in the Marks.[39]  Plaintiff has thus satisfied the first element.  Second, Plaintiff has demonstrated Defendants are using and have used Pure Maintenance's Marks in commerce by providing photographs of Defendants' use of the Marks at a trade show and in social media postings.[40]  And third, given Defendants are Plaintiff's former franchisees,[41] the court finds there is a significant likelihood that customers have been confused by Defendants' use of Plaintiff's Marks.

---

[36] *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014).

[37] *Drexel Enters., Inc. v. Richardson*, 312 F.2d 525, 527 (10th Cir. 1962).

[38] *Steak n Shake Enters., Inc. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1077 (D. Colo. 2015) (citing *Winmark Corp. v. Schneeberger*, No. 13–cv–0274–WJM–BNB, 2013 WL 1154506, at *5 (D. Colo. March 19, 2013)), *aff'd*, 659 F. App'x 506 (10th Cir. 2016); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) ("[U]nauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.'"); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of customer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks.")

[39] Dkt. 10-1, *Exhibit 2*.

[40] *Verified Complaint* ¶¶ 28–36.

[41] *Id.* ¶¶ 17–22.

For these reasons, the court finds Plaintiff has made a strong showing of success on the merits of its federal trademark infringement and unfair competition claim.[42]

## II. Irreparable Harm

The court finds Plaintiff has demonstrated it will suffer irreparable harm unless the court orders injunctive relief.

Demonstration of irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction . . . ."[43] The movant must demonstrate significant risk that it will experience harm that cannot be compensated after the fact by money damages.[44] For harm to be irreparable, it must be "imminent, certain, actual and not speculative."[45] In determining whether irreparable harm will result, the court may consider "the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."[46] Additionally, the Lanham Act provides that a plaintiff seeking an injunction "shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits."[47]

---

[42] Plaintiff also argues it is likely to succeed on its state law unfair competition and trade secret misappropriation claims, as well as its cause of action to enforce the state law judgment. *See Motion* at 8–12. As to the first two claims, the court finds it need not consider whether Plaintiff is likely to succeed on these causes of action because any injunctive relief ordered would be coextensive with the relief requested to remedy the federal trademark infringement and unfair competition claim. *See Roda Drilling Co. v. Siegal*, No. 07-cv-400-GFK-FHM, 2008 WL 4056229, at *5 (N.D. Okla. Aug. 11, 2008) (citation omitted) ("Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits of one of the claims."). As to the state law judgment cause of action, the court addresses this claim in its discussion of irreparable harm. *See infra* § II. Additionally, Plaintiff's Motion does not address its false advertising, defamation, or unjust enrichment causes of action. *See generally Motion*. The court therefore does not premise its issuance of injunctive relief based on whether Plaintiff has demonstrated a likelihood of success on the merits of those claims, nor does the court order relief related to those claims.

[43] *Malamed*, 874 F.3d at 1141 (citation omitted).

[44] *Id.* (citation omitted).

[45] *Colorado v. U.S. Env't Prot. Agency*, 989 F.3d 874, 886 (10th Cir. 2021) (citation omitted).

[46] *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1271 (10th Cir. 2022) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004)).

[47] 15 U.S.C. § 1116(a).

Here, Plaintiff argues it is entitled to a presumption of irreparable harm under the Lanham Act and that, on the merits, it has demonstrated irreparable harm.[48] In its Verified Complaint, Plaintiff explains how Defendants' continued use of the Marks will likely injure Pure Maintenance's "business and reputation," as well as "damage the distinctive quality of the Marks."[49] Plaintiff further describes how Defendants' use "has actually caused and is likely to cause confusion, mistake, and deception among purchasers and the public generally, leading them to believe, falsely, that Defendants' services are those of, sponsored or approved by, or in some way connected with Plaintiff Pure Maintenance . . . ."[50] While some of these allegations border on conclusory, given the Lanham Act's explicit instruction that Plaintiff is entitled to a presumption of irreparable harm, the court finds Plaintiff has met its burden. The facts of this case clearly demonstrate Defendants' infringing conduct. And the court finds Plaintiff has provided sufficient evidence to establish it is suffering ongoing injuries as a result of Defendant's infringement. The court also concludes Plaintiff will continue to suffer these harms absent injunctive relief, which, as a result of their intangible nature, "cannot be compensated after the fact by money damages."[51]

Accordingly, the court finds Plaintiff has established irreparable injury.[52]

---

[48] *Motion* at 13–14.

[49] *Verified Complaint* ¶ 52.

[50] *Id.* ¶ 50.

[51] *Malamed*, 874 F.3d at 1141 (citation omitted).

[52] Regarding its cause of action to enforce the state law judgment, the court finds Plaintiff has failed to establish that monetary relief would not compensate it for any harms suffered. The court therefore concludes Plaintiff has failed to meet its burden regarding this claim.

### III.  Balance of Harms

Plaintiff has made a strong showing the balance of harms weighs in its favor.  As the court explained above, Plaintiff has presented evidence of numerous ongoing injuries resulting from Defendants' conduct.[53]  And the Tenth Circuit instructs that "when the case for infringement is clear," this court should not consider any financial harms to a defendant's business "built upon that infringement."[54]  Similarly, any harm Defendants suffer due to an injunction temporarily enjoining their trademark infringement is of Defendants' own making and does not tip the balance of the harms in their favor.  The court therefore finds that, given the lack of any cognizable harm to Defendants, and the significant ongoing and irreparable harm to Plaintiff, the balance of harms strongly favors Plaintiff.

### IV.  Public Interest

Issuance of a temporary restraining order is in the public interest.  The public has an interest in "the right . . . not to be deceived or confused."[55]  Unless the court enjoins Defendants' infringement, the public will continue to be deceived, confused, and harmed by Defendants' unlawful conduct.  Thus, the court finds Plaintiff has established that issuing injunctive relief is in the public interest.

Having met its heightened burden on the necessary factors and otherwise established its right to relief is clear and unequivocal, Plaintiff is entitled to a temporary restraining order.

---

[53] *See supra* §§ I–II.

[54] *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007) (discussing trade dress infringement under the Lanham Act).

[55] *See Opticians Ass'n of America v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990).

**TEMPORARY RESTRAINING ORDER**

Based on the foregoing, it is HEREBY ORDERED that Plaintiff's Motion is GRANTED as follows:

Defendants, as well as their officers, affiliate companies, agents, servants, employees, successors, licensees, and assignees, and all others in concert and privity with them, are temporarily restrained from engaging in and/or performing any of the following acts:

1. Using the Marks, any variation of the Marks, or any mark that is confusingly similar to any of the Marks, in connection with advertising, promoting, or offering services related to mold removal, remediation, cleaning, and other related services, including on Defendants' websites, social media sites, third-party websites, letterhead, signage, advertising, or promotional material, either in print or broadcast or electronic form or other forms either separately or compositely with other words, symbols or devices; and

2. Imitating Pure Maintenance for any purpose, including, without limitation, attempting to use the Marks and/or Pure Maintenance's goodwill by imitation, fraud, mistake, or deception;

IT IS HEREBY FURTHER ORDERED that the court finds $2,500.00 a proper amount "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" under Federal Rule of Civil Procedure 65(c).  This Order shall not take effect until Plaintiff deposits $2,500.00 with the Clerk of Court and files a notice on the docket certifying such funds have been deposited;

IT IS HEREBY FURTHER ORDERED that this Order shall be, and is, binding upon Defendants, and each of their agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order, effective

immediately upon entry on the docket of Plaintiff's certification that it has deposited the proper security with the Clerk of Court;

AND IT IS HEREBY FURTHER ORDERED that this Order shall remain in effect for fourteen days from the date of entry unless, within such time, the Order, for good cause shown, is extended for an additional period not to exceed fourteen days, or unless it is further extended pursuant to Rule 65 or by stipulation. Based on the sufficiency of Plaintiff's showing, the court intends to extend the Order for an additional fourteen days unless Defendants appear through counsel and file a response. And to the extent this Order does not grant any relief requested by Plaintiff in its Motion, the court's denial of such relief is without prejudice to Plaintiff renewing its request as appropriate.

SO ORDERED this 14th day of August 2025, at 4:00PM.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge